UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

| | |
|---|---|
| GERALD L. BEDINGHAUS,<br><br>    Plaintiff,<br><br>V.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | CIVIL ACTION NO. 2:13-149-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment. (DE 17; DE 18). The plaintiff, Gerald L. Bedinghaus, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial relief of an administrative decision of the Commissioner of Social Security denying his claim for Social Security Disability Insurance Benefits ("DIB"). The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence and was decided by the proper legal standards.

## I. OVERVIEW OF THE PROCESS

The Social Security Act and corresponding regulations provide a five-step sequential process for determining whether a claimant has a compensable disability. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)). If, at any step in the process, the administrative law judge ("ALJ") concludes that the claimant is or is not disabled, then the ALJ can complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof through the first four steps of the analysis; and, at step five, the burden shifts to the Commissioner. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). The claimant must, in order to satisfy his burden of proof, provide sufficient facts to find in his favor. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Bedinghaus filed his claim for DIB on January 21, 2010, alleging an onset date of August 14, 2009. [TR 112, 129]. The agency denied his application initially and on reconsideration. [TR 62, 67]. Bedinghaus requested review by an ALJ, and a hearing was held on January 13, 2012. [TR 29–57]. The ALJ subsequently issued an unfavorable decision on March 1, 2012. [TR 10–22].

At the time the ALJ rendered her decision, Bedinghaus was sixty-three years old. Bedinghaus graduated from college and worked as a manager of a bowling alley before suffering a stroke on August 14, 2009. [TR 17]. He alleges disability due to residual symptoms from the stroke along with the symptoms caused by his diabetes and cardiovascular problems. [TR 17]. Bedinghaus's insured status expired on June 30, 2014. [TR 15].

At the first step, the ALJ determined that Bedinghaus has not engaged in substantial gainful activity since his alleged onset date of August 14, 2009. [TR 15]. At the second step, the ALJ found that Bedinghaus suffers from the following severe impairments: "status post August 2009 stroke, diabetes, hypertension and obesity." [TR 15]. At the third step, the ALJ concluded that Bedinghaus does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [TR 15–16].

Next, the ALJ reviewed the record to determine Bedinghaus's residual functional capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In finding Bedinghaus's RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (i) daily activities; (ii) location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication; (v) additional treatment; (vi) additional measures used to relieve symptoms; and (vii) other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529; SSR 96-4p, 1996 WL 374187 (July 2, 1996); SSR 96-7p, 1196 WL 374186 (July 2, 1996). After reviewing all of the evidence, the ALJ determined that Bedinghaus has the RFC to perform light work with the following

limitations: never climb ropes or scaffolds; occasionally balance; and frequently use his right hand and fingers. [TR 16].

The ALJ continued to the fourth step. The ALJ asked the vocational expert ("VE") whether a hypothetical individual with Bedinghaus's education, experience, and RFC could perform the past work of managing a bowling alley. [TR 52]. The VE testified that this hypothetical individual could perform his past work. [TR 21–22, 53]. Therefore, the ALJ found Bedinghaus not disabled. [TR 22]. The ALJ did not proceed to the fifth step because she concluded that Bedinghaus was not disabled and could complete her Notice of Decision.

The ALJ's decision that Bedinghaus is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied Bedinghaus's request for review on June 17, 2013. [TR 1–3]. Bedinghaus has exhausted his administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

### III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing the decision of the Commissioner, courts should not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Lindsley*, 560 F.3d at 604–05. Courts must look at the record as a whole, and "[t]he court 'may not focus and base [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence.'" *Sias v. Sec. of H.H.S.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988) (alteration in original) (quoting *Hephner v.*

4

*Mathews*, 574 F.2d 359, 362 (6th Cir. 1978)). Rather, courts must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court may have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## IV. ANALYSIS

On appeal, Bedinghaus presents two issues for review. First, he argues that the ALJ erred in failing to consider his cardiovascular and sleep apnea symptoms when determining his RFC and, relatedly, failing to incorporate his cardiovascular and sleep apnea symptoms into the hypothetical questions posed to the VE. Second, he asserts that the ALJ erred in failing to consider a closed period of disability.

*1. The ALJ did not err in establishing Bedinghaus's RFC or in posing hypothetical questions to the VE.*

RFC is an *administrative* finding of an individual's ability to perform work-related activities, and establishing the claimant's RFC is a decision reserved for the Commissioner. *See* 20 C.F.R. § 404.1545(a); SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). The Commissioner's assessment is based upon all of the relevant medical evidence and other evidence in the record, including the claimant's testimony. 20 C.F.R. § 404.1545(a)(3). Medical opinions may include reports from treating physicians, examining physicians, and nonexamining physicians; and the ALJ must discuss the weight afforded to the treating physician's opinion and the rationale supporting the ALJ's determination. *Id.* § 404.1527(c). The ALJ evaluates other medical opinions based upon the amount of medical source evidence supporting the opinion, the consistency of the opinion with the record as a whole, whether the opinion is from a specialist discussing an issue related to his or her area of specialty, and other factors that tend to support or contradict the opinion. *Id.*; *see also*

*Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) (determining that the ALJ's reasoning for crediting or discrediting medical opinions does not need to be verbose).

Here, Bedinghaus asserts that the ALJ failed to consider his cardiovascular condition and sleep apnea along with the alleged limitations associated with these conditions. But the record contradicts this assertion.

The ALJ extensively evaluated Bedinghaus's medical history following his stroke. [TR 17–21]. The ALJ detailed the damage caused by the stroke and the effect of various treatments and therapies. [TR 17–18]. The ALJ observed that Bedinghaus's condition steadily improved despite a setback in mid-2011. [TR 19–20]. In mid-2011, Bedinghaus complained of significant leg cramping but noted that the cramping had been occurring for years. [TR 19]. Bedinghaus's cardiologist, Dr. Dean J. Kerejakes, thought that the cramping was unrelated to his stroke. [TR 20]. Thus, Dr. Kerejakes ordered numerous tests. [TR 19]. The tests confirmed that Bedinghaus needed another angioplasty, and fortunately—after the angioplasty—CT scans confirmed that his arterial flow improved. [TR 20]. The most recent medical record noted that Bedinghaus "had excellent results from the angiography, and clinically was doing well." [TR 20].

The ALJ then analyzed Dr. Kerejakes's[1] medical opinion. [TR 21]. Dr. Kerejakes's medical opinion, written in March 2010, declared that Bedinghaus was "unable to work." [TR 21; TR 379]. The ALJ, however, stated two reasons for giving this opinion "little weight." [TR 21]. First, the ALJ noted that Dr. Kerejakes's opinion concerned an administrative question—whether Bedinghaus could perform work-related activities. [TR 21]; *see also* 20 C.F.R. § 404.1545(a). Second, the ALJ stated that "Dr. Kerejakes's opinion is

---

[1] Dr. Kerejakes was an examining physician, not Bedinghaus's treating physician. The ALJ also analyzed and weighed the medical opinion of Bedinghaus's treating physician, Dr. Robert A. Gerke, but Dr. Gerke's opinion did not address either Bedinghaus's cardiovascular or sleep apnea symptoms. [*See* TR 21].

without substantial support from the other evidence of record, which obviously renders it less persuasive." [TR 21].

The ALJ did not discuss Bedinghaus's sleep apnea, but the ALJ described Bedinghaus's daily activities and symptoms. [*See* TR 20]. The activities included exercising up to two hours per day, preparing daily meals, visiting friends, rising early to read the paper and eat breakfast, going to the racetrack, and running errands. [TR 20]. Notably, Bedinghaus's daily activities are inconsistent with symptoms of sleep apnea—fatigue, cognitive dysfunction, and other neurobehavioral consequences. *See* Naresh M. Punjabi, *The Epidemiology of Adult Obstructive Sleep Apnea*, Proceedings of the American Thoracic Society, Vol. 5, No. 2 (2008), *available at* http://www.atsjournals.org/doi/abs/10.1513/pats.200709-155MG. Overall, the record does not indicate that Bedinghaus had any limitations associated with sleep apnea. *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (holding that it is appropriate for an ALJ to exclude diagnoses from her RFC determination if the diagnoses do not indicate any functional limitations).

Finally, the ALJ summarized and compared Bedinghaus's medical history since his stroke, his testimony of daily activities, and other evidence pertinent to his physical capabilities. [TR 21]. The ALJ concluded that the objective and subjective evidence supported the conclusion that Bedinghaus's "symptoms were essentially resolved, and neurologic and cardiologic care became routine" and his cramping problems were "resolved." [TR 21].

Therefore, substantial evidence supports the ALJ's RFC determination. The ALJ considered all of Bedinghaus's medical records and subjective symptoms, and she concluded that any additional cardiovascular or sleep apnea symptoms would not limit Bedinghaus's ability to perform work-related activities.

*2. The ALJ did not err in failing to consider a closed period of disability.*

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1509 (stating the twelve month durational requirement). Claimants bear the burden of producing evidence to prove the twelve month durational requirement. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012) (citing *Her*, 203 F.3d at 391).

Here, Bedinghaus asserts that it is "undisputed" that he was disabled immediately following his August 2009 stroke and that the ALJ never determined whether he was disabled for a closed period lasting at least twelve months. Bedinghaus, however, overlooks the ALJ's Notice of Decision and the physical assessments by the state-employed physicians. [TR 21; TR 369–76; TR 432–40]. The ALJ's Notice of Decision explicitly concluded that "by July 2010 . . . his symptoms were essentially resolved." [TR 21]. Thus, the ALJ's decision precludes consideration of a closed period of disability because Bedinghaus did not experience a twelve-month period when he was unable to perform work-related activities. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). Further, the ALJ's Notice of Decision established that the state-employed physicians' assessments "deserve[d] some weight" because their assessments were more consistent with the objective medical evidence and Bedinghaus's proclaimed symptoms. [TR 21]. The first state-employed physician's assessment, completed in April 2010, found Bedinghaus capable of performing activities consistent with the ALJ's RFC determination. [*Compare* TR 370–74, *with* TR 16]. The second state-employed physician's assessment, completed in November 2010, noted little change in Bedinghaus's condition from April 2010 and affirmed

Bedinghaus's capabilities. [TR 433]. In light of the ALJ's Notice of Decision and the state-employed physicians' records, Bedinghaus does not present a credible argument that the ALJ failed to consider a closed period of disability.

## V. CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1. Plaintiff's motion for summary judgment (DE 17) is **DENIED**;

2. The Commissioner's motion for summary judgment (DE 18) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Opinion & Order will be entered contemporaneously.

Dated November 21, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY